# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

       v.                                          Criminal Action No. 2:10CR12

**JESSE HOWES,**
       **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Jesse Howes, in person and by counsel, Brian J. Kornbrath, appeared on November 1, 2010. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Two of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated the agreement as summarized by counsel for the Government was correct and complied with his understanding of the same. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was

signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Jesse Howes, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned reviewed with Defendant Count Two of the Indictment, including the elements the United States would have to prove at trial, charging him with possession of material used in the manufacture of methamphetamine, with intent to facilitate the manufacture of methamphetamine, in violation of Title 21, United States Code, Sections 843(a)(6) and 843(d)(2).

The undersigned reviewed Count Two of the indictment and the written plea agreement. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the

charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of up to three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable within 40 days following entry of his guilty plea. He also understood that his sentence could be increased if he had prior firearm offense, violent felony, or drug convictions. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his waiver of appellate rights as follows:

Ct: Did you and Mr. Kornbrath discuss your direct appeal rights to the Fourth Circuit Court of Appeals?

Def: Yes, sir.

Ct: Did you and Mr. Kornbrath discuss your collateral appeal rights– that is the way you can indirectly or collaterally challenge your sentence and how it was imposed, using a writ or habeas corpus type motion under 28 USC section 2255?

Def: Yes, sir.

Ct: Did you and Mr. Kornbrath discuss that if the District Judge in sentencing you doesn't sentence you to more than ten years in prison, doesn't sentence you to more than a quarter million dollar fine, or both fine and imprisonment, or more than three years of supervised release, you give up your right to directly appeal to the Fourth Circuit Court of Appeals and you give up your right to collaterally attack or challenge that sentence and how it was imposed using a writ of habeas corpus under 28 USC 2255?

Def:    yes, sir.

Ct:     Is that what you intended to do?

Def:    Yes, sir.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the written plea bargain agreement.

The undersigned Magistrate Judge inquired of Defendant, his counsel, and the Government as to the non-binding recommendations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Two of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Two of the Indictment and make a determination as to whether to accept or reject any recommendation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

The undersigned next discussed with the parties the non-bindings stipulations contained in the written agreement, which provide:

1. USSG section 2D1.12(c)'s cross reference to guideline 2D1.1 applies, because the offense involved unlawfully manufacturing a controlled substance, being methamphetamine.

2. During the period identified in count one (December 2008 to June 7, 2010, the defendant possessed more than forty but less than seventy grams of pseudoephedrine, knowing it would be used to manufacture methamphetamine. There is additional drug relevant conduct referenced in a report from the WVSP Forensic Laboratory, dated August 19, 2010, but this additional drug weight is either double counting, and/or it is not enough to increase the defendant's base offense level above 28.

3. The defendant resides with his brother, who has a child who occasionally stays overnight at the residence pursuant to the brother's visitation rights. There are firearms inside the residence. The equipments, chemicals, product and material referenced in count two was possessed outside the residence but within the curtilage of the residence, in a burn-pile, in or near the trunk of a car, and in the grass near the front door.

13 [sic]. The parties do not agree whether (1) the offense created a substantial risk of harm to the life of a minor within the meaning of USSG 2D1.1(b)(10)(D); (2) whether a firearm was "possessed within the meaning of USSG 2D1.1(b)(1); and (3) whether the offense involved the manufacture of methamphetamine and created a substantial risk of harm to human life and the environment, pursuant to Guideline 2D1.1(b)(10)(C)(ii).

14[sic]. Pursuant to Section 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that the defendant owes restitution in the amount of $5,811.25 to the Drug Enforcement Administration. The defendant further agrees that if he is financially able to do so prior to the

sentencing hearing scheduled by the district Court in this matter, that he shall pay part or all the restitution in the amount of $5,811.25 by "certified check" made payable to Clerk, US District Court and mailed or delivered to the U.S. Attorney's Office for the Northern District of West Virginia, 200 Third Street, Suite 300, Elkins, WV 26241. If the defendant is financially able to pay part or all of the restitution prior to sentencing and fails to do so, then the Office of the United States Attorney shall have the right to withdraw any sentencing recommendations and/or to void this Agreement.

15 [sic]. If any part of the restitution obligation in the amount of $5811.25 is not paid on or before the date of the sentencing hearing, then the defendant agrees that the payment of said restitution and/or other criminal monetary penalty may be made a provision of the Judgement and Commitment Order entered by the Court. The defendant understands and agrees that, pursuant to 18 U.S.C. section 3613, any criminal monetary penalty made a provision of the Judgement and Commitment Order shall be due and payable immediately and will be subject to immediate enforcement by the United States as provided for in section 3613. The defendant also agrees to provide all of his financial information to the Untied States and the U.S. Probation Officer and, if requested, agrees to participate in a pre-sentence debtor examination to be conducted by the United States under oath and before a court reporter. The defendant acknowledges and agrees that if the Court imposes a payment schedule for the payment of any criminal monetary penalty, then the payment schedule shall be the minimum payment obligation and shall not be the only method or a limitation on the methods available to the United States to enforce the criminal monetary penalty judgement. The defendant further agrees that if he is incarcerated, then he shall participate in the Inmate Financial Responsibility Program established by the U.S.

Bureau of Prisons, regardless of whether the Court requires such participation or imposes a criminal monetary penalty payment schedule.

16[sic]. The defendant further agrees that the Untied States may submit any unpaid criminal monetary penalty to the United States Treasury for offset regardless of the defendant's payment status or history at the time of said submission.

Defendant also understood the Court was not bound by any of the above stipulations, and that if the Court does not go along with these non-binding stipulations or if he is sentenced to a higher sentence than he expected, he would still not be permitted to withdraw his guilty plea.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not be permitted to withdraw his guilty plea.. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, Jesse Howes, with the consent of his counsel, Brian J. Kornbrath, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Two of the Indictment.

The Court heard the testimony of Upshur County Sheriff's Deputy Rocky Hebb. Cpl. Hebb testified he knew Defendant from a search warrant he had executed at Defendant's residence on June 7, 2010. The warrant was obtained to search for a meth lab. Cpl. Hebb, along with other officers, executed the search warrant. They found items around the residence that were used in the manufacture

of methamphetamine. Cpl Hebb was shown photographs of the scene. He identified the photographs as accurate depictions of the scene as they executed the search warrant. In the photos were a glass jar containing starter fluid and pseudoephedrine; a depiction of the location of the jar in relation to the house; burnt lithium batteries and burnt starter fluid cans found in a burn pile outside the residence, about 30 feet away; anhydrous tanks in the trunk of a Dodge Stratus; and three "generators" (made using milk jugs) behind a ford pickup truck. Inside the Stratus they also found coffee filters, glass jars and plastic hosing.

Defendant stated to Cpl. Hebbs that the items were all his, and he knew the pills were out front soaking in the glass jar.

The undersigned United States Magistrate Judge concludes Defendant's plea of guilty to the offense charged in Count Two of the Indictment is supported by the testimony of Cpl. Hebb.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count Two of the Indictment; Defendant understood the consequences of his plea of guilty, including the maximum statutory penalty and the mandatory reimbursement; Defendant made a knowing and voluntary plea of guilty to Count Two of the Indictment; and Defendant's plea is independently supported by the testimony of Cpl. Hebb, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Two of the Indictment and recommends he be adjudged guilty on said charge as contained in Count Two of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release previously entered in this case, modified to lift the condition that did not allow him to have contact with his brother.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: November 5, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE